**ORIGINAL**

**CRIMINAL COMPLAINT**

FILED
CLERK, U.S. DISTRICT COURT
MAY 10 2016
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

**16-0975M**

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>ELIZABETH CASTANEDA and ESTELA CASTANEDA | MAGISTRATE'S CASE NO. |

Complaint for violation of Title 18, United States Code, Section 1708

| NAME OF MAGISTRATE JUDGE | UNITED STATES MAGISTRATE JUDGE | LOCATION<br>Los Angeles, California |
|---|---|---|

| DATE OF OFFENSE<br>May 5, 2016 | PLACE OF OFFENSE<br>Los Angeles County | ADDRESS OF ACCUSED (IF KNOWN) |
|---|---|---|

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

[18 U.S.C. § 1708]

On or about May 5, 2016, in Los Angeles County, within the Central District of California, defendants ELIZABETH CASTANEDA and ESTELA CASTANEDA unlawfully possessed mail matter that had been stolen from the United States mail, namely, approximately 63 pieces of mail matter addressed to various individuals, and at that time and place defendants ELIZABETH CASTANEDA and ESTELA CASTANEDA knew that said mail was stolen.

LODGED
2016 MAY 10 AM 11:56
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

(See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE: N/A

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br>**KIMBERLY GRANGER**  *Kimberly Granger*<br>OFFICIAL TITLE<br>Postal Inspector – United States Postal Inspection Service |
|---|---|

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE<br>MICHAEL R WILNER | DATE<br>May 10, 2016 |
|---|---|

AUSA Anil J. Antony x6579     AJA     REC: Detention

## AFFIDAVIT

I, Kimberly Granger, being duly sworn, declare and state as follows:

### I. INTRODUCTION

1. I am a United States Postal Inspector ("USPI") employed by the United States Postal Inspection Service ("USPIS"), Los Angeles Division, in Los Angeles, California. I have been so employed since July 2014. I am currently assigned to the Pasadena Mail Theft team, where my responsibilities include the investigation of crimes against the United States Postal Service ("USPS") and crimes related to the misuse and attack of the mail system, including theft of the United States mail ("US Mail"); possession of stolen mail; and crimes related to the use, theft, or counterfeiting of postal keys (referred to as "arrow keys") and locks. As part of the Mail Theft team, I also investigate crimes in connection with access devices that include credit cards and debit cards, identity theft, and unauthorized use of other persons' information for financial gain, as these criminal schemes have been known to be perpetrated through the US Mail.

### II. PURPOSE OF AFFIDAVIT

2. This affidavit is made in support of a criminal complaint against Elizabeth Castaneda ("ELIZABETH CASTANEDA") and Estela Castaneda ("ESTELA CASTANEDA") for violation of Title 18, United States Code, Section 1708 (possession of stolen mail).

1

Instrumentality Protocol

3. This affidavit is also made in support of an application for a warrant to search the digital device described below in Paragraph 5 and in Attachment A for the items listed in paragraph 6 and in Attachment B.

4. The facts set forth in this affidavit are based upon my personal observations, my training and experience, my conversations with other law enforcement officers, inspectors, agents, and witnesses, and my review of reports generated by the San Marino Police Department ("SMPD"). This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and search warrant, and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### III. PROPERTY TO BE SEARCHED

5. The property to be searched is the following digital device, seized on May 6, 2016 by the SMPD, and which is currently in the custody of the USPIS in Los Angeles, California:

    a. A white Samsung Galaxy phone, bearing FCC ID A3LSMG360T ("SUBJECT DEVICE"), as described in Attachment A, for the items to be seized described in Attachment B. Attachments A and B are incorporated herein by reference.

### IV. ITEMS TO BE SEIZED

6. The items to be seized are the evidence, fruits, and instrumentalities of violations of Title 18, United States Code,

Instrumentality Protocol

Sections 371 (conspiracy), 1028 (fraud in connection with identification documents), 1028A (aggravated identity theft), 1029 (fraud in connection with access devices), 1704 (stolen/reproduced keys or locks), and 1708 (mail theft) (collectively, the "SUBJECT OFFENSES"), as described in Attachment B.

## V. SUMMARY OF PROBABLE CAUSE

7. On May 5, 2016, following a traffic stop of a vehicle with an expired registration, being driven by ESTELA CASTANEDA and in which ELIZABETH CASTANEDA was a passenger, SMPD officers discovered approximately 63 pieces of stolen mail and mail matter on the floor of the front passenger seat area and strewn in the back seat area of the vehicle. The officers also found bolt cutters, a Dremel tool, and a stolen USPS "arrow" lock in the back seat area of the vehicle. Moreover, the officers recovered a counterfeit arrow key from ELIZABETH CASTANEDA, which she had removed from the pocket of her sweatshirt and had attempted to hide underneath her person. The SUBJECT DEVICE was recovered from ESTELA CASTANEDA after she and ELIZABETH CASTANEDA were arrested.

## VI. STATEMENT OF PROBABLE CAUSE

A. Background

8. On or about May 6, 2016, USPIS was contacted by SMPD regarding the arrest of ELIZABETH CASTANEDA and ESTELA CASTANEDA. Based on my conversations with SMPD Officer Bestpitch, as well as my reviews of reports from SMPD and the items of evidence seized, I learned the following:

3

Instrumentality Protocol

a. On or about May 5, 2016, at approximately 11:53 p.m., while Officer Bestpitch was working uniformed patrol and driving a marked police unit ("patrol car"), he observed a black Toyota 4Runner bearing California license plate number 6VMA649 ("the vehicle") driving on Huntington Drive.  Officer Bestpitch conducted a records check of the license plate of the vehicle, which revealed that its registration expired on November 22, 2015, in violation of California Vehicle Code 4000(a)(1) (Expired Registration).  He also saw that, even though the vehicle's registration was apparently expired, the vehicle bore a 2016 registration tab.  Officer Bestpitch followed the vehicle as it turned south onto Bradbury Road, and he then activated his overhead emergency lights.  The vehicle yielded in front of 1395 Bradbury Road.

b. Officer Bestpitch exited his patrol car and walked toward its front, when he observed a female driver (later identified as ESTELA CASTANEDA) remove keys from the ignition and place them onto the dashboard.  As Officer Bestpitch approached the driver's side window of the vehicle he observed a female passenger (later identified as ELIZABETH CASTANEDA) throw papers onto the back seat of the vehicle.

c. Officer Bestpitch then contacted ESTELA CASTANEDA, and asked for her driver's license, the vehicle's registration, and proof of insurance.  As ESTELA CASTANEDA was retrieving her license, ELIZABETH CASTANEDA stated that the vehicle belonged to "friend," and she began to look through the glove box for the vehicle registration.  ELIZABETH CASTANEDA

4

Instrumentality Protocol

then told Officer Bestpitch that they were driving to El Sereno and were in San Marino because they were taking a shortcut.[1]

    d.    Officer Bestpitch advised both ELIZABETH CASTANEDA and ESTELA CASTANEDA to continue to look for the vehicle's registration and stated that he would later return to the vehicle. Officer Bestpitch then went to his patrol car to conduct a records check of ESTELA CASTANEDA, which indicated that she had a valid driver's license. At around that time, SMPD Officer Dan Gosserand arrived on scene to assist Officer Bestpitch.

    e.    Officer Bestpitch walked back to the driver's side of the vehicle to contact ESTELA CASTANEDA while Officer Gosserand approached the passenger side. When the officers reached the vehicle, neither ESTELA CASTANEDA nor ELIZABETH CASTANEDA was able to provide a current registration for the vehicle or proof of insurance. ELIZABETH CASTANEDA, however, informed the officers that she had found an envelope from the DMV addressed to the registered owner of the vehicle, J.K. The envelope that ELIZABETH CASTANEDA showed to the officers was sealed. ELIZABETH CASTANEDA opened the sealed envelope and told Officer Bestpitch that it was a notice of intent to suspend the vehicle's registration.

    f.    ELIZABETH CASTANEDA then tossed a piece of the envelope out of the window. Officer Gosserand stated, in sum

---

[1] During subsequent interviews, ELIZABETH CASTANEDA and ESTELA CASTANEDA both told Officer Bestpitch that they were coming from a Motel 6 in Arcadia, California, where they were both living at the time.

and substance, "Are you going to pick that up?" In response, ELIZABETH CASTANEDA opened the passenger door and exited the vehicle to retrieve the trash that she had thrown to the ground.

  g. Officer Bestpitch asked ESTELA CASTANEDA to exit the vehicle so that the officers could continue their investigation, and asked both women to sit on the curb. Officer Bestpitch advised ELIZABETH CASTANEDA and ESTELA CASTANEDA that he was going to look in the vehicle for the vehicle's registration, which Officer Bestpitch understood he was authorized to do under California state law. ELIZABETH CASTANEDA stated that she did not give Officer Bestpitch permission to search the vehicle, and that this was not her vehicle.

  h. Officer Bestpitch checked underneath the driver's seat and center console but did not find a registration card. He then walked to the passenger side and opened the door so that he could examine the passenger glove box. Officer Bestpitch immediately noticed that there were papers and envelopes scattered on the floor of the passenger side. He therefore looked at the envelopes to see if one of them held the registration, but noticed that the envelopes were addressed to multiple addresses in Arcadia, California and appeared to be addressed to persons with Asian names, not to ELIZABETH CASTANEDA, ESTELA CASTANEDA, or the purported owner of the vehicle, J.K. Officer Bestpitch immediately believed that he was looking at evidence of mail theft, in violation of California Penal Code 530.5 (Mail Theft). Officer Bestpitch

Instrumentality Protocol

therefore began to search the vehicle for other evidence of mail theft.

        i. While Officer Bestpitch began searching the vehicle, Officer Gosserand watched ELIZABETH CASTANEDA and ESTELA CASTANEDA. Officer Gosserand observed ELIZABETH CASTANEDA reach into the pocket of her hooded sweatshirt, and remove a small metal object with her right hand and place it under her right thigh.

        j. Officer Gosserand informed Officer Bestpitch that ELIZABETH CASTANEDA was trying to hide something underneath her leg. Officer Bestpitch therefore placed ELIZABETH CASTANEDA and ESTELA CASTANEDA, who were still sitting on the curb, in handcuffs so that the officers could safely investigate. Officer Bestpitch helped ELIZABETH CASTANEDA stand up, and move to behind the vehicle. Officer Gosserand then observed a metal object on the curb, directly under where ELIZABETH CASTANEDA had been seated. Officer Gosserand picked up the object and immediately recognized it as a counterfeit Postal arrow key. ELIZABETH CASTANEDA stated that the key was not hers, and that the officers had planted the key.[2]

---

[2] Subsequently, after ELIZABETH CASTANEDA and ESTELA CASTANEDA were arrested, they were, as discussed later, driven to the Alhambra Police Department jail for booking. During the drive to the jail, ELIZABETH CASTANEDA and ESTELA CASTANEDA conversed in Spanish, in a low voice. Officer Bestpitch could not hear or understand them during that time, and ELIZABETH CASTANEDA and ESTELA CASTANEDA would both stop speaking whenever the patrol car came to a stop (i.e., when the vehicle was more quiet). Thereafter, during Mirandized interviews, both ELIZABETH CASTANEDA and ESTELA CASTANEDA stated that they had obtained the stolen mail, counterfeit Postal arrow key, Postal
(footnote cont'd on next page)

  k. Officer Bestpitch then continued his search of the vehicle, because he believed that he had probable cause to believe that ELIZABETH CASTANEDA and ESTELA CASTANEDA had committed, <u>inter alia</u>, mail theft. He opened the rear driver's side door and found envelopes, which were addressed to locations in Arcadia. In total, the officers located approximately 63 pieces of mail matter within the vehicle.

  l. Officer Bestpitch also found a large set of yellow bolt cutters on the floorboard and a Dremel rotary tool inside of a Dremel box. Officer Bestpitch knew, based on his training and experience, that Dremel tools are often used by mail thieves to manufacture counterfeit Postal arrow keys. (Based on my training and experience, I also am aware that mail thieves will use power tools, such as a Dremel tool, to manufacture counterfeit Postal arrow keys.)

  m. Officer Bestpitch also found a Postal arrow lock with a piece of metal connected to it, in the back seat area of the vehicle. It appeared to Officer Bestpitch as if the metal had been pried and cut to get the arrow lock out of its location.[3]

---

arrow lock, and tools, in Arcadia, California, shortly before being stopped by Officer Bestpitch. They both stated that they had observed a man place a bag near a dumpster and that ELIZABETH CASTANEDA retrieved the bag, in which she found those items. ELIZABETH CASTANEDA was, however, unable to identify where specifically the dumpster was, and this account contradicts her earlier, above-described, statement that the SMPD officers had "planted" the Postal arrow key.

[3] Officer Bestpitch also found, in the backseat of the vehicle, a laptop computer with a barcode sticker that stated "Los Angeles County Public Defender." The government does not
            (footnote cont'd on next page)

      n.    Finally, while Officer Bestpitch was collecting the envelopes from the front passenger seat of the vehicle, he found four pre-printed checks and a check book in the name of a person other than ELIZABETH CASTANEDA or ESTELA CASTANEDA.

      o.    At approximately 1:12 a.m., Officer Bestpitch transported both ELIZABETH CASTANEDA and ESTELA CASTANEDA to Alhambra Police Department ("APD") jail for booking and housing. During an inventory search at the jail, a small amount of methamphetamine was found in ESTELA CASTANEDA's purse. ELIZABETH CASTANEDA said that it belonged to her (although ESTELA CASTANEDA later admitted that she too used methamphetamine as recently as a month ago).

      p.    During a search of ELIZABETH CASTANEDA, APD Jailer Ruvalcaba recovered a small black disc and small metal rod from ELIZABETH CASTANEDA's right front pocket. Officer Bestpitch recognized the disk to be a grinding disk, which appeared to fit the Dremel tool that was recovered from inside the vehicle. APD Jailer Ruvalcaba conducted an inventory check of ESTELA CASTANEDA's purse and recovered the SUBJECT DEVICE.

## VII. TRAINING AND EXPERIENCE REGARDING MAIL AND IDENTITY THEFT

    9.    Based on my training and experience, including being a member of the Mail Theft Team, and information obtained from other law enforcement officers who investigate mail and identity theft, I know the following:

---

intend to search the laptop, and understands that SMPD will notify the Los Angeles County Public Defender of the apparently stolen laptop.

Instrumentality Protocol

a.  Persons involved in mail theft and identity fraud typically obtain the checks and personal information they seek by stealing the mail of victims, or from co-conspirators who have done these things.

b.  Persons who steal mail are often involved in identity theft crimes.  These individuals usually steal mail looking for access devices and other personal identifying information (such as credit or debit cards, credit card applications, and bank account statements) that they can use to fraudulently obtain money and items of value.  Mail thieves often retain these items of value from stolen mail in order to make fraudulent purchases or sell the items to others in exchange for cash or narcotics.

c.  It is common practice for individuals involved in mail theft, access device fraud, and identity theft to use and maintain digital devices.  These digital devices include, but are not limited to, thumb drives, memory chips, flash drives, computers, and cellphones.  These individuals use such devices to store information about their identify theft crimes long after the crimes have been committed.  This information can include, but is not limited to, the following:  logs of fraudulent transaction history; records of funds received; information regarding individuals and companies that have been victimized; records of payments from co-conspirators; and victim profiles.  Such "profiles" contain the personal identifying information of victims, such as names, Social Security numbers, dates of birth, driver's license or state identification

Instrumentality Protocol

numbers, alien registration numbers, passport numbers, and employer or taxpayer identification numbers.

   d. Mail and identity thieves oftentimes use digital devices to perpetrate their crimes due to the relative anonymity gained by conducting financial transactions electronically on the internet. These individuals employ digital devices for purposes of, among other things, (i) applying online for fraudulent credit cards, (ii) obtaining personal identification information for the purposes of establishing or modifying fraudulent credit card accounts, (iii) using fraudulently obtained credit cards to make purchases, (iv) manufacturing counterfeit identification, credit cards, and checks, (v) keeping records of their crimes.

   e. Individuals who participate in these schemes often maintain telephone numbers and other contact information of their co-conspirators in order to facilitate their crimes together. Oftentimes they maintain the contact information in their cellular telephones and other digital devices.

  10. The Mail Theft Team also investigates crimes related to the use, theft, or counterfeiting of postal arrow keys and locks. Through my training and experience, I have learned that USPS "arrow keys" are used by USPS mail carriers to unlock USPS "arrow locks" in order to (i) gain access to housing complexes or apartment buildings, and (ii) deliver mail to the respective mailboxes found therein (most commonly found in a mailbox panel). USPS arrow keys are also sometimes used to gain access to mail collection boxes in a specific area. In my training and

Instrumentality Protocol

experience, I have also learned that non-postal employees and mail thieves refer to arrow keys as "skeleton keys," "shaved keys," or "postal keys." Mail thieves typically use stolen or counterfeit arrow keys to gain access to housing complexes or apartment buildings in order to steal mail from numerous mailboxes. Mail thieves also steal USPS arrow locks to make counterfeit arrow keys through reverse engineering.

11. Mail thieves make counterfeit arrow keys using a variety of tools. Mail thieves who use stolen or counterfeit arrow keys will often communicate with co-conspirators regarding those stolen or counterfeit arrow keys, such as through text message conversations regarding whether and where the stolen or counterfeit arrow keys work, or sending/receiving or downloading photographs of arrow keys.

VIII.   TRAINING AND EXPERIENCE ON DIGITAL DEVICES

12. Based on my knowledge, training, and experience, as well as information related to me by agents and others involved in the forensic examination of digital devices, I know that it is not always possible to search digital devices for digital data in a single day or even over several weeks for a number of reasons, including the following:

a. Searching digital devices can be a highly technical process that requires specific expertise and specialized equipment. There are so many types of digital devices and software programs in use today that it takes time to conduct a thorough search. In addition, it may be necessary to consult with specially trained personnel who have specific

expertise in the type of digital device, operating system, and software application being searched.

   b. Digital data is particularly vulnerable to inadvertent or intentional modification or destruction. Searching digital devices can require the use of precise, scientific procedures that are designed to maintain the integrity of digital data and to recover "hidden," erased, compressed, encrypted, or password-protected data. As a result, a controlled environment, such as a law enforcement laboratory or similar facility, is essential to conducting a complete and accurate analysis of data stored on digital devices.

   c. It is difficult to estimate the precise storage space contained on the SUBJECT DEVICE prior to conducting any kind of examination, but, based on my training and experience, I know that computers and cellular telephones can contain multiple gigabytes of storage space. A single megabyte of storage space is the equivalent of 500 double-spaced pages of text. A single gigabyte of storage space, or 1,000 megabytes, is the equivalent of 500,000 double-spaced pages of text.

   d. Electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the Internet. Electronic files saved to a hard drive can be stored for years with little or no cost. Even when such files have been deleted, they can be recovered months or years later using readily-available forensics tools. Normally, when a person deletes a file on a computer, the data contained in the file does not

Instrumentality Protocol

actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space, i.e., space on a hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space, for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a swap or recovery file. Similarly, files that have been viewed on the Internet are often automatically downloaded into a temporary directory or cache. The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently downloaded or viewed content. Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits. Recovery of residue of electronic files from a hard drive requires specialized tools and a controlled laboratory environment. Recovery also can require substantial time.

     e. Although some of the records called for by this warrant might be found in the form of user-generated documents (such as word processing, picture, and movie files), digital devices can contain other forms of electronic evidence as well. In particular, records of how a digital device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents,

14

Instrumentality Protocol

programs, applications and materials contained on the digital devices are, as described further in the attachments, called for by this warrant. Those records will not always be found in digital data that is neatly segregable from the hard drive image as a whole. Digital data on the hard drive not currently associated with any file can provide evidence of a file that was once on the hard drive but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave digital data on the hard drive that show what tasks and processes on the computer were recently used. Web browsers, e-mail programs, and chat programs often store configuration data on the hard drive that can reveal information such as online nicknames and passwords. Operating systems can record additional data, such as the attachment of peripherals, the attachment of USB flash storage devices, and the times the computer was in use. Computer file systems can record data about the dates files were created and the sequence in which they were created. This data can be evidence of a crime, indicate the identity of the user of the digital device, or point toward the existence of evidence in other locations. Recovery of this data requires specialized tools and a controlled laboratory environment, and also can require substantial time.

      f.   Further, evidence of how a digital device has been used, what it has been used for, and who has used it, may be the absence of particular data on a digital device. For

example, to rebut a claim that the owner of a digital device was not responsible for a particular use because the device was being controlled remotely by malicious software, it may be necessary to show that malicious software that allows someone else to control the digital device remotely is not present on the digital device. Evidence of the absence of particular data on a digital device is not segregable from the digital device. Analysis of the digital device as a whole to demonstrate the absence of particular data requires specialized tools and a controlled laboratory environment, and can require substantial time.

13. Other than what has been described herein, to my knowledge, the United States has not attempted to obtain this data by other means.

## IX. CONCLUSION

14. For all the reasons described above, there is probable cause to believe that ELIZABETH CASTANEDA and ESTELA CASTANEDA have committed a violation of Title 18, United States Code, Section 1708 (possession of stolen mail).

15. Furthermore, there is probable cause to believe that the items listed in Attachment B, which constitute evidence, fruits, and instrumentalities of violations of the SUBJECT

//
//
//

OFFENSES, will be found in the SUBJECT DEVICE, as described in Attachment A.

*Kimberly Granger* (signature)
KIMBERLY GRANGER
United States Postal Inspector
United States Postal
Inspection Service

Subscribed to and sworn before me this 10 day of May, 2016.

_____
HONORABLE MICHAEL R WILNER
UNITED STATES MAGISTRATE JUDGE